## NEELY v. UNITED STATES.
### No. 8970.

United States Court of Appeals
District of Columbia.

Decided June 29, 1945.

Mr. John L. Laskey, of Washington, D.C. (appointed by District Court) with whom Mr. J. Carroll Hayes, of Washington, D.C., was on the brief, for appellant.

Mr. John L. Ingoldsby, Jr., Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and ARNOLD, Associate Justices.

MILLER, Associate Justice.

Appellant was convicted of murder in the first degree and sentenced to death. On appeal the judgment was affirmed[1] and the Supreme Court denied certiorari.[2] Thereafter, he petitioned for a writ de lunatico inquirendo. In his petition he requested: (1) That the Court enter an order directing the Commission on Mental Health for the District of Columbia to examine into the mental condition of appellant and report the results of such examination to the Court; (2) as an alternative, that the Court direct the employment at public expense of a physician to examine into the mental condition of appellant; (3) that the writ de lunatico inquirendo be issued by the District Court and that a jury be drawn to inquire into the insanity of the appellant; (4) that subpoenas ad testificandum be issued to witnesses in the event that the writ de lunatico inquirendo should be issued.

---

[1] Neely v. United States, 79 U.S.App.D. C. 177, 144 F.2d 519.

[2] Neely v. United States, 323 U.S. 754, 65 S.Ct. 83.

The trial court—the same judge who had presided in the criminal trial—set the matter for hearing; it considered affidavits filed in support of the petition and heard appellant's testimony. On this occasion, appellant testified that he was not insane, but that his mind "goes off at times;" that drinking whiskey makes him lose his mind. He testified concerning a number of reckless and criminal acts which he had committed while under the influence of liquor. At this point *no* showing, prima facie or otherwise, had been made of present insanity. However, out of an abundance of caution, the trial court then acceded to petitioner's request that he be examined by the Commission. That body of experts examined him and reported that he was of sound mind. It reported, also, that appellant had deliberately attempted to deceive the Commission in its examination. The trial court then set the matter, again, for a hearing; received the report of the Commission; once more heard testimony of appellant; received and considered an additional affidavit; and thereafter denied the petition for a writ and for a jury trial.

The ultimate question on this appeal is whether the court abused its discretion in applying the applicable provisions of the District Code, which are set out in the margin.[3] The preliminary question is whether appellant submitted such prima facie evidence, to show that he was then insane, as to require that a jury should have been impaneled to inquire into his mental condition. We conclude that both questions should be answered in the negative.

The supporting affidavits were made by lay witnesses, concerning events of appellant's childhood and youth, in North Carolina; none of them more recent than fifteen years prior to the time of the hearing. While evidence of this character may be admitted,[4] it is, necessarily, of little weight even when it bears upon the issue.[5] In the present case, the evidence indicated that appellant, as a youth, had been reckless, imprudent and brutal, but it had little tendency to prove insanity even as of that time. Remote as it was to the present issue, it was completely valueless. Appellant's behavior at both hearings was normal; he gave intelligent and responsive answers to questions, both on direct and cross-examination. At the second hearing, he changed his mind as to his mental condition and, in response to his attorney's question, "Do you believe now that you presently are of sound mind?", replied: "No, I am not." In the affidavit, sworn to by appellant's brother in North Carolina, which was filed prior to the adjourned hearing, episodes of appellant's early life were recited and then the affiant said: "I know for certain and without any doubt that Monroe is not in his right mind, and that it would be wrong and great injustice for the Law to take his life in Washington in that Murder case instead of imprisoning him." Such opinion evidence of a lay witness is valueless.[6]

Justice Story's often quoted definition of prima facie evidence reads: "It is such as, in judgment of law, *is sufficient to establish the fact;* and, if not rebutted, remains sufficient for the purpose."[7] [Italics supplied]. It cannot be seriously

[3] D.C.Code (1901) § 927, D.C.Code (1940) § 24—301: "* * * *whenever* a person is indicted or is charged by an information for an offense, and before trial or after a verdict of guilty, *prima facie evidence is submitted* to the court *that the accused is then insane*, the court *may* cause a jury to be impaneled * * * to inquire into the insanity of the accused, and said inquiry shall be conducted in the presence and under the direction of the court. If the jury shall find the accused to be then insane, or if an accused person shall be acquitted by the jury solely on the ground of insanity, the court may certify the fact to the Secretary of the Interior, who may order such person to be confined in the hospital for the insane, and said person and his estate shall be charged with the expense of his support in the said hospital. The person whose sanity is in question shall be entitled to his bill of exceptions and an appeal as in other cases."

[4] Earles v. State, 128 Tex.Cr.R. 663, 84 S.W.2d 235, 236; Waycaster v. State, 185 Miss. 25, 36, 187 So. 205, 208; Commonwealth v. Williams, 307 Pa. 134, 143, 160 A. 602, 605.

[5] Rogers v. State, 77 Vt. 454, 467, 61 A. 489, 493; State v. Morris, 263 Mo. 339, 348, 172 S.W. 603, 605; Guiteau's Case, D.C. 10 F. 161, 172. See State v. Tarwater, 293 Mo. 273, 293, 239 S.W. 480, 486.

[6] Shaffer v. United States, 24 App.D.C. 417, 438; Gonzales v. United States, 40 App.D.C. 450, 457; 2 Wharton, Criminal Evidence, 11th Ed. 1935, § 993, p. 1739. See Commonwealth v. Buccieri, 153 Pa. 535, 549, 26 A. 228, 233; Watts v. State, 99 Md. 30, 36, 57 A. 542, 545.

[7] Kelly v. Jackson, 6 Pet. 622, 632, 31 U.S. 622, 632, 8 L.Ed. 523; see Bailey

contended that the evidence before the court in the present case was sufficient to establish the fact of insanity under any definition of the word. The purpose of the statute[8] is to prevent the infliction of punishment upon a person so lacking in mental capacity as to be unable to understand the nature and purpose of the punishment.[9] To this end the question is wisely left to the sound discretion of the judge.[10] As in respect of other matters within the discretion of trial courts, its exercise will not lightly be disturbed.[11]

■ On this appeal, appellant contends that the trial court should have disregarded the report of the Commission; that—although the examination was made at appellant's request and in support of his attempt to make a prima facie showing—nevertheless to permit its consideration would have the effect of a waiver of privilege upon his part. It could as well be contended, for the same reason, that a court should disregard any other evidence produced in support of such a petition, if it chanced to be unfavorable to the petitioner. Obviously, the exercise of the court's discretion cannot be controlled by such devices.

Affirmed.

---

v. Alabama, 219 U.S. 219, 234, 31 S.Ct. 145, 55 L.Ed. 191; Lilienthal's Tobacco v. United States, 97 U.S. 237, 268, 24 L.Ed. 901.

[8] D.C.Code (1901) § 927, D.C.Code (1940) § 24—301.

[9] Cf. 4 Bl. Comm. *24—*25, *396; Lee v. State, 118 Ga. 764, 769, 45 S.E. 628, 630; In re Smith, 25 N.M. 48, 56, 176 P. 819, 822, 3 A.L.R. 83, and authorities cited; People v. Lawson, 178 Cal. 722, 727, 174 P. 885, 888.

[10] Nobles v. Georgia, 168 U.S. 398, 409, 18 S.Ct. 87, 91, 42 L.Ed. 515: "It being demonstrated by reason and authority that at common law a suggestion, made after verdict and sentence, of insanity, did not give rise to an absolute right on the part of a convict to have such issue tried before the court and to a jury, but addressed itself to the discretion of the judge, it follows that the manner in which such question should be determined was purely a matter of legislative regulation."

[11] Gonzales v. United States, 40 App. D.C. 450, 456.